# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action. No. 1:15-cv-00129-RPM**

HEDY ANSELMAN,

    Plaintiff,

v.

HEALTHONE OF DENVER, INC. and

HCA-HEALTHONE LLC d/b/a SWEDISH MEDICAL CENTER

    Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Hedy Anselman was discharged from her position as a Registered Nurse working in the intensive care unit for defendants' hospital, Swedish Medical Center ("Swedish"), on August 13, 2015. The reasons why her supervisor discharged her were outlined in the last Corrective Action that Anselman received on the date of her firing. That document recounted negative feedback from Anselman's coworkers regarding Anselman's conduct with respect to specific patient safety issues and, after detailing the feedback, concluded:

> Hedy is not following the standards of care for CCU and is putting our
> patients at risk for a bad outcome. Hedy's practice as a RN at

1

> Swedish has been sloppy and does not meet the expectations we have
> for an RN here.  There has been a pattern of poor performance from
> Hedy.  Hedy has been counseled previously without improvement.
> Hedy's behavior and performance is not acceptable and does not
> comply with [specific internal policies].  As a result, Hedy's
> employment will be terminated effective immediately.

Ex. I, Doc. 22-9, p.2.

The Corrective Action also noted that Anelman had been counseled previously for disciplinary issues on five other occasions.  *Id.*  The negative feedback referenced in Anselman's last Corrective Action was discussed with Anselman and her supervisors on August 9, 2013.  On that day, Anselman met with Ann Randall and Sue Buskiewic.  Randall and Buskiewic are also both Registered Nurses.  Randall is the Director of Nursing for Swedish's intensive care unit and Buskiewic is the Associate Director for the same.  Anselman was scheduled to work the day after her meeting with Randall and Buskiewic.  However, it was agreed that Anselman would not come to work the next day.  Randall claims Anselman would not be coming into work because she suspended Anselman.  Anselman contends her understanding was not that she was suspended, but that she was being given the day off so that Randall could speak with one of the nurses who had written a complaint about Anselman.  In any event, Anselman said she would return to work August 13, 2015 for them to discuss the matter further.

Randall took another meeting later that same day with Angela Kresnik, Swedish's then associate director of Human Resources.  In that meeting, Kresnik told Randall that, based on Anselman's previous discipline and the recent incidents, Randall could end

Anselman's employment. At that point, Randall concluded she would fire Anselman because she did not believe Anselman's care standards were up to Swedish's requirements. Kresnik's understanding was also that Anselman would be fired due to performance issues relating to patient safety.

On August 10, 2013, the day after Anselman met with Randall and Buskiewic to discuss the performances issues and Randall met with Kresnik to discuss the availability of ending Anselman's employment, Anselman completed an injury report for an injury she asserts she sustained to her back around 6 a.m. on August 9, 2013. Anselman did not mention the injury to Randall or Buskiewic on the day the injury reportedly occurred, the day of the performance meeting. Anselman states she did not realize the extent of her injury until the next morning. Anselman went to Swedish on August 10, 2013 to turn in the injury report to Employee Health.

Anselman agrees that the events contained in the Corrective Action paperwork that lead to and resulted in her discharge occurred, but disputes that the events are grounds to fire her. Her assigning a different value to her discipline than Swedish did, however, does not give rise to valid legal claims.

Anselman claims that her discharge was in violation of the Age Discrimination in Employment Act of 1967, 29. U.S.C. §§ 621, *et seq*. ("ADEA") and also in violation of public policy because it was made in retaliation for having complained that she disliked how Swedish's merit-based increase program rewarded taking meal breaks and for having made a workers' compensation injury report.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 1367 (supplemental jurisdiction). The events that gave rise to plaintiff's claims occurred within the jurisdiction of the United States District Court for the District of Colorado and venue is proper in this Court pursuant to 28 U.S.C. § 1391.

Anselman's age discrimination claim is based on one statement allegedly made by Randall to Anselman when they were in the elevator on the way to the discharge meeting. According to Anselman, Randall said, ""You are no longer a good fit for Swedish. You are getting too old and slipping over the past two years[,]" and then laughed. Anselman Decl., Doc. 25-1, ¶ 51. In the Complaint, the language is quoted as Randall telling Anselman that firing Anselman would be "'best for the hospital and plaintiff, since plaintiff was getting too old and had been slipping over the past two years' or words to that effect." Compl. Doc. 1, ¶ 31.

For an ADEA claim to succeed, the plaintiff must demonstrate that age was the "but-for" cause of firing. *See Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010)("The Tenth Circuit has long held that a plaintiff must prove but-for causation to hold an employer liable under the ADEA.") Age must be the factor that makes a difference. *Id.*

As Anselman twice stated herself, Randall's comment refers not just to plaintiff's age, but also to her "slipping," which implicates the performance issues that were addressed by the Corrective Actions and in personnel meetings. Anselman has not shown or attempted to show that the age comment was the but-for cause of her discharge. Swedish has given legitimate, non-discriminatory, non-pretextual reasons for Anselman's discharge—the Corrective Actions. Anselman has provided no legal argument or factual basis for a

4

reasonable jury to find that the discipline issued to Anselman, including eventually her firing, was pretextual. Accordingly, Anselman's ADEA claim fails as a matter of law.

Anselman's wrongful discharge in violation of public policy claim based on her merit system critiques is also fatally underdeveloped. Anselman has not offered any legal authority stating or suggesting that Colorado law provides a wrongful discharge in violation of public policy claim where the facts are that an employee complains about her employer's merit increase plan and its observed effect on some other employees' meal breaks. Anselman personally did not falsify meal breaks and took them in fact or not at all. Similarly, when Anselman complained to Buskiewic about the merit increase system, she was instructed not to clock out of she was not taking a real break and to try to take real breaks. These facts do not suggest that Anselman was exercising a job-related right or performing a specific statutory duty when she mentioned to her supervisors that she disliked how the merit increase plan was structured because some other employees were following it only superficially.

Furthermore, Buskiewic did not make the decision to fire Anselman. Randall did. As for Randall's alleged knowledge about Anselman's merit system concerns, at least five months had passed between the date Anselman wrote comments about the merit system in an evaluation she claims Randall reviewed and when Anselman was fired. That is a long enough time between the alleged protected activity and the adverse employment action to reasonably belie causation with no other facts. *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir.1997) (finding a three month period between protected activity and adverse employment action, standing alone, insufficient to establish causation). Anselman offers no

evidence to support her theory that her comments in the evaluation influenced Randall's decision to fire her.

Anselman's workers' compensation wrongful-discharge claim also fails because she has failed to present evidence of causation. Swedish, in line with Randall's deposition and declaration testimony, listed as a statement of undisputed fact in its opening brief that Randall made the decision to fire Anselman on August 9, 2013, the day before Anselman submitted her injury report. Anselman has never contested that. Anselman has not offered any evidence suggesting that Randall fired her because she filed an injury report. At most, adopting Anselman's timeline as Randall having been notified of the injury on August 12, 2013, Anselman shows that Randall knew about the injury after deciding to fire her but before actually firing her. No attempt at making a casual connection between the injury report and Anselman's discharge has been made.

Because Anselman has not raised any genuine issues of material fact to support her claims, it is

ORDERED that defendants' Motion for Summary Judgment, Doc. 22, is GRANTED.

DATED: February 11, 2016

                              BY THE COURT:

                              s/Richard P. Matsch

                              _____

                              Richard P. Matsch, Senior District Judge